# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

EDWARD CRANFORD,

      Plaintiff,

v.

LT. JEFF McCALL,

      Defendant.

Case No. 2:07-cv-1024
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of a motion for summary judgment (Doc. # 14) filed by Defendant, Lt. Jeff McCall, a memorandum in opposition (Doc. # 16) filed by Plaintiff, Edward Cranford, and a reply memorandum (Doc. # 17) filed by Defendant. For the reasons that follow, this Court finds the motion well taken.

### I. Background

On the evening of October 10, 2005, Defendant stopped Plaintiff for excessive smoke emitting from Plaintiff's vehicle. (McCall Dep. at 22:23-25.) At no time prior to the stop had Defendant witnessed any erratic driving by Plaintiff, and no other reason was given for the stop other than the excessive smoke. (*Id.* at 22:19-25.) Emitting smoke is a minor misdemeanor, and not proper cause for an arrest. (*Id.* at 23:1-4.) Plaintiff produced his license without any difficulty. (*Id.* at 25:18-22). Defendant and Plaintiff engaged in a short dialogue regarding the cause of the Plaintiff's smoke emissions, and Defendant did not recall having any trouble understanding or communicating with Plaintiff. (*Id.* at 42:11-25.) After Defendant detected an

odor of alcohol coming from the vehicle, Defendant asked Plaintiff whether he had been drinking; Plaintiff replied that he had not. (*Id.* at 28:1-10). Defendant then asked Plaintiff to blow in his face. (*Id.* at 28:11-13.) Noting that Plaintiff had replied to one of the questions with slurred speech, Defendant asked Plaintiff to step out of the car and to perform a few field sobriety tests. (*Id.* at 29:9-22.) Plaintiff agreed to do so (*id.* at 29:23-25) and exited the vehicle with no apparent difficulties (*id.* at 30:1-21).

The first test Defendant attempted to administer was the Horizontal Gaze Nystagmus test ("HGN"). (*Id.* at 30:22-25.) Plaintiff refused to perform the HGN field sobriety test, stating that he had a glass eye. (Cranford Dep. at 57:18-23.) Plaintiff removed his eye to show it to Defendant and accidently dropped it on the ground. (*Id.* at 57:20-25 to 58:1-4.) When the glass eye fell, it bounced on the ground, and Plaintiff reached out and grabbed the eye before it bounced a second time. (*Id.* at 58:1-7.) Defendant attempted to have Plaintiff perform the HGN test with Plaintiff's good eye, asking Plaintiff to follow Defendant's finger without moving his head, and Plaintiff refused to conduct the test. (McCall Dep. at 32:2-8.) Defendant noted that Plaintiff's good eye was red and glassy and that Plaintiff rocked back and forth on his heels, both of which Defendant took as indicators of alcohol consumption, but did not question Plaintiff about his eye or the rocking back on his heels. (*Id.* at 37:6-10.)

Defendant then asked Plaintiff to perform a walk-and-turn test, another field sobriety test, and Plaintiff stated that he was unable to perform the test because he had broken his back and still suffered from the effects of that injury. (*Id.* at 33:11-24.) Defendant noted that Plaintiff did attempt to begin the walk-and-turn test by placing one foot in front of the other, but stopped. (*Id.* at 37:11-16.) Defendant informed Plaintiff that if he persisted in refusing to perform the field

sobriety tests, Plaintiff would be arrested. (*Id.* at 34:6-9.) Plaintiff refused to perform any tests and stated that he was physically unable to perform any of the tests. (*Id.* at 59:7-17, 61:5-7.)

Defendant placed Plaintiff under arrest for driving under the influence. (McCall Dep. at 36:11-13.) Following the arrest, Plaintiff was taken to the police station where Defendant attempted to administer a breathalyzer test to determine Plaintiff's blood alcohol content ("BAC"), but Plaintiff refused to take this test. (Cranford Dep. at 72:4-5.) In a subsequent hearing, Defendant was found to have no probable cause to arrest Plaintiff for operating a vehicle while intoxicated ("OVI"). (McCall Dep. at 48:22-25.)

Plaintiff subsequently brought this action against Defendant under 42 U.S.C. §§ 1983 and 1988, asserting illegal search and seizure, false arrest, excessive force, false imprisonment, and malicious prosecution. (Compl. ¶ 16.) Defendant has filed a motion for summary judgment. (Doc. # 14.) The parties have completed briefing on the motion, which is now ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. Rule. Civ. P. 56(c). In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

However, "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claims." *Id.* (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; *see also* Fed. R. Civ. P. 56(c).

**B. Analysis**

As noted, Defendant moves for summary judgment on Plaintiff's 42 U.S.C. § 1983 claims. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, in order to assert valid § 1983 claims, Plaintiff must show that, while acting under color of state law, Defendant deprived him of a right secured by the Federal

Constitution or laws of the United States. *See Alkire v. Irving,* 330 F.3d 802, 813 (6th Cir. 2003).

The threshold issue in this case is whether probable cause to arrest Plaintiff existed. For probable cause to arrest to exist, the "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (citing *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)). Put simply, "[a] police officer has probable cause if there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (internal quotation and citations omitted). Furthermore, an arrest based upon probable cause where the suspect is later found to be innocent will not meet the criteria for a § 1983 action. *See Criss*, 867 F.2d at 262 (citing *United States v. Covelli*, 738 F.2d 847, 854 (7th Cir.), *cert. denied*, 469 U.S. 867 (1984).

Whether there exists a probability of criminal activity is assessed under a reasonableness standard based on " 'an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.' " *Crockett*, 316 F.3d at 580 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). The existence of probable cause is a jury question, unless

there is only one reasonable determination that is possible. *Crockett*, 316 F.3d at 581; *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

Defendant argues that he is entitled to summary judgment on all of Plaintiff's claims because probable cause to arrest existed. The parties correctly agree that the state court judge's granting of Plaintiff's motion to suppress does not prove dispositive of this Court's probable cause analysis. *See Manley v. Paramount's Kings Island*, No. 07-4539, 2008 WL 476 4121, at *6 (6th Cir. Nov. 3, 2008) (explaining that a state court's determination of no probable cause to arrest is not binding on a federal court in a subsequent § 1983 action). But this Court need not decide whether probable cause actually existed here because, even assuming *arguendo* that it did not, Defendant is still entitled to summary judgment based on qualified immunity.

The qualified immunity doctrine, under certain circumstances, operates to shield from civil liability governmental officials, such as police officers, who are performing official duties. *Sinick v. Summit*, 76 F. App'x 675, 679 (6th Cir. 2003). This affirmative defense is meant to safeguard an official's proper decision-making process and offers that party potential relief from frivolous suits. *See D'Agastino v. Warren*, 75 F. App'x 990, 993 (6th Cir. 2003). The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition to shielding officials from liability, qualified immunity may entitle the official not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). This principle directs courts to make a ruling on the issue of qualified immunity early in the

proceedings, so that the costs and expenses of trial are avoided where the defense is dispositive. *Id.*

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted. In addressing the potential applicability of qualified immunity, a court therefore follows a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation. Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)); *see also Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008). This analytic approach has also been characterized as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights?

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). *See also Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) (restating test); *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known.").

As the Sixth Circuit has long recognized, "[i]t is well established that any arrest without probable cause violates the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (citing *Crockett*, 316 F.3d at 580). Thus, assuming without deciding that

there was a lack of probable cause to arrest Plaintiff means that a constitutional violation had occurred. There is also no dispute that at the time of the incident at issue, the right to be free from an arrest without probable cause was a clearly established right of which a reasonable person would have known. *See Beck v. Ohio*, 379 U.S. 89, 90-91 (1964) (recognizing that an arrest without probable cause violates the Fourth Amendment); *Parsons*, 533 F.3d at 504 (same). This leaves only the third part of the qualified immunity inquiry: whether Plaintiff has alleged sufficient evidence to indicate that what Defendant allegedly did was objectively unreasonable in light of the clearly established constitutional rights involved.

Here, Plaintiff does not dispute that Defendant made a reasonable stop to inspect a suspected misdemeanor violation. Defendant then based his decision to arrest Plaintiff for OVI on several factors.[1] Upon stopping Plaintiff, Defendant smelled alcohol on Plaintiff and noticed

---

[1] The following exchange that took place at Defendant's deposition provides a summary of these factors:

> Q. And tell me the specific facts upon which you relied in your assessment of probable cause.
>
> A. The initial contact, the odor of alcoholic beverage coming from a vehicle, [Plaintiff's] indication of not looking at me, asking if he had been drinking, he says, "Absolutely not," but upon blowing in my face, I detect the odor of an alcoholic beverage on his breath. I asked him a question, and his response was so slurred that I could not determine what his response was. Upon exiting the vehicle, I could still detect the odor of an alcoholic beverage on his breath.
> Placing him in the start position for the horizontal gaze nystagmus, he rocked back on his heels. He did have a red, glassy right eye. He took his left eye out and dropped the eye, another sign of poor coordination and impairment.
> Taking him to the back of my car, explained to put his right foot in front of his left foot touching heel to toe and to remain in this position, instead putting the right foot in front of the left foot, he put his left foot in front of his right. And at that point, he said he did not want to do the test.

an agitated or nervous demeanor in Plaintiff, and when Defendant asked Plaintiff to perform various field sobriety tests, Plaintiff refused, which further alerted Defendant to the possible nature that a crime was being committed. Defendant also observed the red, glassy haze of Plaintiff's good eye and noted Plaintiff's slurred response to a question. Plaintiff also rocked back on his heels once, prior to the unperformed HGN test. Although Plaintiff now presents explanations for most if not all of these circumstances, Plaintiff did not offer the majority of these explanations to Defendant during the traffic stop.[2] Defendant's reasonable belief as to the existence of probable cause stemmed from his assessment of the totality of the circumstances, including these as-then unexplained factors. At best, then, Defendant made a reasonable mistake in arresting Plaintiff.

If Plaintiff's arrest were indeed a reasonable mistake on the part of Defendant, the officer is entitled to qualified immunity. *See Saucier*, 533 U.S. at 206. The Sixth Circuit has explained that "probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness." *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir.

---

> I explained to him at this point that if he continued the refusal, I would place him under arrest for operating a motor vehicle under the influence, which is what happened.

(McCall Dep. at 36:20-25 to 37:1-20.) Defendant also testified that "the totality of the circumstances" led to his conclusion that Plaintiff was impaired. (*Id.* at 34:14-19.)

[2] Plaintiff asserts that he refused the HGN test because he only had one eye and did not feel he could conduct the test. (Cranford Dep. at 57:18-23.) Similarly, Plaintiff refused to conduct the walk and turn test due to purported issues with his back. (McCall Dep. at 33:17-34.) Plaintiff also asserts that the odor of alcohol was a result of a pressurized keg exploding on him at work, and soaking him in beer just prior to being pulled over. (Cranford Dep. at 53:13-18.) Finally, Plaintiff avers that when he gets nervous, he speaks quickly and does not effectively enunciate his words, which could be construed as slurring a word or answer. (*Id.* at 84:9-21.)

9

1993). Thus, "under § 1983, 'an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.' " *Parsons*, 533 F.3d at 501 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)). Because a reasonable officer in Defendant's position could have mistakenly believed that he had probable cause to arrest, this Court must conclude that Defendant is entitled to qualified immunity. *See Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (finding that qualified immunity existed where a reasonable officer could have believed in action taken by defendant officers that proved to be erroneous).

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendant is] not entitled to qualified immunity." *Wegener*, 933 F.2d at 392; *see also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). Plaintiff argues in his memorandum in opposition that summary judgment based on qualified immunity is not appropriate here because there are factual issues for the jury. But Plaintiff does not contest the fundamental facts upon which Defendant relies. Based on the facts before this Court, including those Plaintiff emphasizes, Plaintiff has failed to demonstrate that Defendant is not entitled to qualified immunity on the claim for false arrest and the related claims flowing from that arrest.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment based on grounds of qualified immunity. (Doc. # 14.) The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court

for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

        /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE